IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

SHERMAN DIVISION

| | | |
|---|---|---|
| JAMES BRADLEY RIEMER, #1854097 | § | |
| VS. | § | CIVIL ACTION NO. 4:15cv362 |
| DIRECTOR, TDCJ-CID | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Petitioner James Bradley Riemer, an inmate confined in the Texas prison system, filed the above-styled and numbered petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was referred for findings of fact, conclusions of law and recommendations for the disposition of the case.

Procedural History of the Case

Riemer is challenging his Denton County conviction for two counts of indecency with a child, Cause No. F-2011-2619-E. On November 8, 2012, after a jury trial, he was sentenced to twenty years of imprisonment on each count, with the sentences running consecutively. The conviction was affirmed. *Riemer v. State*, No. 02-12-00613-CR, 2013 WL 6565057 (Tex. App. - Ft. Worth Dec. 12, 2013, no pet.).

Riemer filed an application for a writ of habeas corpus in state court on July 28, 2014. The State submitted proposed findings of fact and conclusions of law, which were adopted by the state trial court on August 21, 2014. The Texas Court of Criminal Appeals subsequently denied the application without written order on findings of the trial court without a hearing. *Ex parte Riemer*, No. WR-82,161-01 (Tex. Crim. App. Oct. 22, 2014). Riemer filed a second application for a writ of habeas corpus in state court challenging the conviction on January 12, 2015. The Texas Court of Criminal Appeals dismissed the application as an abuse of the writ pursuant to Tex. Code Crim. Proc. Art. 11.07 § 4(a)-(c). *Ex parte Riemer*, No. WR-82,161-04 (Tex. Crim. App. April 22, 2015).

Riemer filed the present petition on May 18, 2015. He argues that he is entitled to federal habeas corpus relief because his trial counsel was ineffective for the following reasons:

1.     Failure to investigate;

2.     Failure to provide fact witnesses; and

3.     Cumulative error stemming from counsel's failure to give an opening statement, failure to object to an improper statement, and failure to impeach the State's expert.

The Director filed an answer (docket entry #8) on July 23, 2015. Riemer has not filed a reply.

## Factual Background of the Case

The state court of appeals discussed the factual background of the case as follows:

Riemer was charged with two counts of indecency with a child involving Linda, his stepdaughter, and two counts of aggravated sexual assault of a child and one count of continuous sexual abuse of a child involving June, his biological daughter. The trial court denied Riemer's motion to sever, in which he argued that the complainants were different, that the instances involving each complainant purportedly occurred at different times, and that joinder of the offenses would create unfair prejudice against him by bolstering each witness's credibility. The trial court denied the motion to sever.

According to Linda, in 2000, when she was around eight or nine years old, Riemer began inappropriately touching her while her mother Kathy worked the night shift. One night, frightened by a storm, Linda went to Riemer's room and asked if she could sleep there. He agreed, and when she woke up, she was on her stomach, her pants and underwear were around her ankles, and Riemer, who was not wearing pants, was on top of her. Linda said that Riemer's penis touched her "butt cheek," his legs were on either side of her body, and "[f]or lack of a better term, he was humping [her]." Linda also described that on more than one occasion, Riemer put his hand down her pants, beneath her underwear, and held her "butt cheek" and took her hand and placed it on his penis. She said that the "humping" activity happened again a few weeks or months after the first time and that the second time was the last time Riemer did anything to her. Linda stated that during this time period, which was no more than a few months, Riemer did "special stuff" for her, such as letting her watch special shows on television or saying that she was his favorite. Linda said that after she learned at school that what Riemer was doing was wrong, she tried to stay away from him.

According to June, in 2002, when she was around four years old, Riemer began sexually assaulting her and continued to do so for several years, totaling over 200 instances, until she was around eleven years old. As with Linda, June stated that the first assault happened one night while Kathy was working the night shift. June was scared of a storm, went to Riemer's room, and asked to get into his bed. After she climbed into bed with him, Riemer pulled down her pants and underwear, pulled down his clothes, and put his penis into her anus. June said that it hurt, that Riemer told her that she could not tell anyone, and that it was their secret. When she was eight or nine years old, he began putting his penis into her female sexual organ. June said that she did not tell anyone because she was afraid that no one would believe her. June said that Riemer treated her differently from the other children, buying her dolls and cheap jewelry, and that he stopped sexually abusing her when she was eleven years old.

After Riemer separated from Kathy in 2004, June and her brothers would visit him overnight either every weekend or every other weekend until June's March 2011 outcry. June's half-brother Adam noted that June and Riemer had slept in the same bed together every night as far as he could remember but when Adam said something to Riemer about it, Riemer told him that it was none of his business and not to play parent. Both Adam and June's twin brother Jack testified that it was strange that Riemer would let June run around the apartment wearing nothing but her underwear when she was eight or nine years old.

In April 2011, after she learned of June's outcry, Linda reported to the Denton County Sheriff's Department that she had been sexually assaulted as a child. Linda said that she had not told anyone after the first time it happened because she had been young and scared.

The State had filed a motion for cumulative sentences, and after the jury found Riemer guilty of each of the offenses and assessed his punishment, the trial court set the sentences to run consecutively.

*Riemer v. State*, 2013 WL 6565057, at *1-2 (internal footnotes omitted). The court of appeals noted that it used pseudonyms to protect the complainants' identities. The present petition concerns the indecency charges involving the victim identified as Linda by the state appellate court.

## Standard of Review

The role of federal courts in reviewing habeas corpus petitions by prisoners in state custody is exceedingly narrow. A person seeking federal habeas corpus review must assert a violation of a federal constitutional right. *Lowery v. Collins*, 988 F.2d 1364, 1367 (5th Cir. 1993). Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996), *cert. denied*, 520 U.S. 1242 (1997). Federal courts do "not sit as a super state supreme court on a habeas corpus proceeding to review error under state law." *Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007) (citations omitted), *cert. denied*, 552 U.S. 1314 (2008); *Skillern v. Estelle*, 720 F.2d 839, 852 (5th Cir. 1983), *cert. denied*, 469 U.S. 873 (1984).

The petition was filed in 2014, thus review is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 327 (1997). Under AEDPA, a petitioner who is in custody "pursuant to the judgment of a State court" is not entitled to federal habeas corpus relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).  "By its terms § 2254 bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)."  *Harrington v. Richter*, 562 U.S. 86, 98 (2011).  AEDPA imposes a "highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt."  *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations and internal quotation marks omitted).  With respect to the first provision, a "state court decision is 'contrary to' clearly established federal law if (1) the state court 'applies a rule that contradicts the governing law' announced in Supreme Court cases, or (2) the state court decides a case differently than the Supreme Court did on a set of materially indistinguishable facts."  *Nelson v. Quarterman*, 472 F.3d 287, 292 (5th Cir. 2006) (en banc) (quoting *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003)), *cert. denied*, 551 U.S. 1141 (2007).  "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 563 U.S. 170, ___, 131 S. Ct. 1388, 1398 (2011).  As such, "evidence later introduced in federal court is irrelevant to § 2254(d)(1) review."  *Id.* at 1400.  "The same rule necessarily applies to a federal court's review of purely factual determinations under § 2254(d)(2), as all nine Justices acknowledged."  *Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011), *cert. denied*, 133 S. Ct. 105 (2012).  The Supreme Court has specified that a Texas court's factual findings are presumed to be sound unless a petitioner rebuts the "presumption of correctness by clear and convincing evidence."  *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (citing 28 U.S.C. § 2254(e)(1)).  The "standard is demanding but not insatiable; . . . [d]eference does not by definition preclude relief."  *Id.* (citation and internal quotation marks omitted).  More recently, the Supreme Court held that a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Richter*, 562 U.S. at 101 (citation omitted).  *See also Clark v. Thaler*, 673 F.3d 410, 421-22 (5th Cir. 2012), *cert. denied*, 133 S. Ct. 179

(2012). The Supreme Court has explained that the provisions of AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Federal habeas corpus relief is not available just because a state court decision may have been incorrect; instead, a petitioner must show that a state court decision was unreasonable. *Id.* at 694.

Discussion and Analysis

A.    <u>Failure to Exhaust and Procedural Bar</u>

The Director initially argues that Riemer's second and third claims are unexhausted and procedurally barred. State prisoners bringing petitions for a writ of habeas corpus are required to exhaust all state remedies before proceeding in federal court unless "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective." 28 U.S.C. § 2254(b)(1). In order to exhaust properly, a state prisoner must "fairly present" all of his claims to the state court. *Picard v. Connor*, 404 U.S. 270, 275 (1981). This means that a petitioner must have informed the state court system of the same facts and legal theories upon which he bases his assertions in his federal habeas petition. *Id.* at 276-77; *Dispensa v. Lynaugh*, 847 F.2d 211, 217-18 (5th Cir. 1988). "The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court." *Morris v. Dretke*, 413 F.3d 484, 491 (5th Cir. 2005) (citation omitted). "It is not enough that all the facts necessary to support the federal claim were before the state courts . . . or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982). Rather, the petitioner must have presented the substance of his federal constitutional claim to the state courts. *Id.; Picard*, 404 U.S. at 513. The state court must have been apprised of all of the facts and legal theories upon which the petitioner bases his assertions. *Picard*, *supra*; *Dispensa*, 847 F.2d at 217; *Rodriguez v. McKaskle*, 724 F.2d 463, 466 (5th Cir.), *cert. denied*, 469 U.S. 1039 (1984). Where a petitioner makes the same legal claim to a federal court which he presented to the state courts, but supports that claim with factual allegations which he did not make to the state courts, he has failed to satisfy the exhaustion requirement. *Rodriguez*, 724 F.3d at 466*; Burns v. Estelle,* 695

F.2d 847, 849 (5th Cir. 1983). In Texas, all claims must be presented to and ruled on by the Texas Court of Criminal Appeals. *Richardson v. Procunier*, 762 F.2d 429, 432 (5th Cir. 1985); *Deters v. Collins*, 985 F.2d 789, 797 (5th Cir. 1993). When a petition includes claims that have been exhausted along with claims that have not been exhausted, it is called a "mixed petition," and historically federal courts in the Fifth Circuit have dismissed the entire petition for failure to exhaust. *Galtieri v. Wainwright*, 582 F.2d 348, 355 (5th Cir. 1978) (*en banc*).

In recent years, however, unexhausted claims in a mixed petition have been dismissed as procedurally barred. *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir.), *cert. denied*, 515 U.S. 1153 (1995). *See also Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001). Such unexhausted claims would be procedurally barred because if a petitioner attempted to exhaust them in state court they would be barred by Texas abuse-of-the-writ rules. *Fearance*, 56 F.3d at 642. Along these same lines, a claim presented in a state application that was dismissed as a subsequent application is procedurally barred. *Smith v. Johnson*, 216 F.3d 521, 523 (5th Cir. 2000). The procedural bar may be overcome by demonstrating either cause and prejudice for the default or that a fundamental miscarriage of justice would result from the court's refusal to consider the claim. *Fearance*, 56 F.3d at 642.

A careful review of Riemer's state application for a writ of habeas corpus reveals that he alleged that his trial counsel was ineffective for failing to fulfil his duty to investigate, failing to bring forth an important witness (medical or psychological), and in the aggregate/totality. In conjunction with the cumulative error claim, Riemer specifically complained that his attorney had no opening statement, no trial strategy and failed to object to improper statements. The claims presented in his memorandum attached to his federal petition closely follow the claims as presented in the memorandum attached to his state application. The Director's argument that Riemer's second and third claims are unexhausted lacks any basis in fact.

B.    Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are governed by the Supreme Court's standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* provides a two-pronged standard, and the petitioner bears the burden of proving both prongs. *Id.* at 687. Under the first prong,

he must show that counsel's performance was deficient. *Id.* To establish deficient performance, he must show that "counsel's representation fell below an objective standard of reasonableness," with reasonableness judged under professional norms prevailing at the time counsel rendered assistance. *Id.* at 688. The standard requires the reviewing court to give great deference to counsel's performance, strongly presuming counsel exercised reasonable professional judgment. *Id.* at 690. Under the second prong, the petitioner must show that his attorney's deficient performance resulted in prejudice. *Id.* at 687. To satisfy the prejudice prong, the habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. An ineffective assistance of counsel claim fails if a petitioner cannot satisfy either the deficient performance or prejudice prong; a court need not evaluate both if he makes an insufficient showing as to either. *Id.* at 697.

In the context of § 2254(d), the deferential standard that must be accorded to counsel's representation must also be considered in tandem with the deference that must be accorded state court decisions, which has been referred to as "doubly" deferential. *Richter*, 131 S.Ct. at 788. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* "If the standard is difficult to meet, that is because it was meant to be." *Id.* at 786. *Also see Morales v. Thaler*, 714 F.3d 295, 302 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 393 (2013).

Riemer initially alleges that his attorney was ineffective for failing to fulfil his duty to investigate the facts surrounding the case. "An attorney has a duty to independently investigate the charges against his client." *Bower v. Quarterman*, 497 F.3d 459, 467 (5th Cir. 2007) (citation omitted), *cert. denied*, 553 U.S. 1006 (2008). "To establish that an attorney was ineffective for failure to investigate, a petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial." *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005). Other than providing a legal discourse about the duty to investigate, Riemer did

not apply the law to a discussion of the facts in this case. He did not provide any factual discussion about what an investigation would have revealed and how it would have changed the outcome of the trial. Riemer has offered nothing other than conclusory allegations and bald assertions, which are insufficient to support a petition for a writ of habeas corpus. *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir.), *cert. denied*, 531 U.S. 849 (2000); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990); *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983). He did not show that his attorney's representation was deficient or that he was prejudiced by such deficient representation. He failed to satisfy either *Strickland* prong. The first ineffective assistance of counsel claim lacks merit.

Riemer next alleges that his attorney was ineffective for failing to provide fact witnesses. In conjunction with this claim, he alleges that his attorney should have presented testimony from a medical defense expert or a psychological defense expert. The Fifth Circuit "has repeatedly held that complaints of uncalled witnesses are not favored in federal habeas review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). To succeed on the claim, a petitioner must show that had counsel investigated the claim he would have found witnesses to support the defense, that such witnesses were available, and had counsel located and called these witnesses, their testimony would have been favorable and they would have been willing to testify on his behalf. *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985); *Gomez v. McKaskle*, 734 F.2d 1107, 1109-10 (5th Cir.), *cert. den.*, 469 U.S. 1041 (1984). Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness severely undermines a claim of ineffective assistance. *Sayre v. Anderson*, 238 F.3d 631, 636 (5th Cir. 2001). Conclusory claims are insufficient to entitle a habeas corpus petitioner to relief. *United States v. Woods*, 870 F.2d 285, 288 (5th Cir. 1989); *Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982), *cert. denied*, 461 U.S. 951 (1983). *See also King v. Cockrell*, 33 F. App'x. 703 (5th Cir.), *cert. denied*, 536 U.S. 989 (2002).

In the present case, Riemer does nothing more than assert that his attorney was ineffective for failing to provide fact witnesses. Although he mentioned a medical defense expert and a psychological defense expert, he did not show that these or any other witnesses were available and had counsel

located and called these witnesses, their testimony would have been favorable and they would have been willing to testify. Once again, he has presented a conclusory claim, which does not provide a basis for federal habeas corpus relief. He did not show that his attorney's representation was deficient or that he was prejudiced by such deficient representation. He did not satisfy either *Strickland* prong. His second ineffective assistance of counsel claim lacks merit.

Riemer finally alleges that his attorney was ineffective based on the totality of his representation, which is a cumulative error claim. In support of this claim, he specifically mentions counsel's failure to provide an opening statement, failure to object to an improper statement and failure to impeach the State's expert.

The Fifth Circuit has long held that the decision of whether to present an opening statement falls squarely within "the zone of trial strategy." *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984); *Gillard v. Scroggy*, 847 F.2d 1141, 1147 (5th Cir. 1988), *cert. denied*, 488 U.S. 1019 (1989). *See also Martinez v. Dretke*, 426 F. Supp.2d 403, 468-69 (W.D. Tex. 2006) (where petitioner has alleged no specific facts showing how his attorney's failure to make an opening statement prejudiced him and where evidence was "overwhelming," there was no "reasonable probability that, but for the failure of petitioner's trial counsel to make an opening statement . . ., the outcome of the guilt-innocence phase of petitioner's trial would have been different."). Riemer has the burden of demonstrating both deficient performance and resultant prejudice. *Strickland*, 466 U.S. at 687. He failed to satisfy either prong. Once again, he offered nothing other than conclusory allegations and bald assertions, which are insufficient to support a petition for a writ of habeas corpus. *See Miller*, 200 F.3d at 282; *Koch*, 907 F.2d at 530; *Ross*, 694 F.2d at 1011.

Riemer also argues that his attorney was ineffective for failing to object to an improper statement. He explained that the SANE witness improperly testified that the victim had told her that "she was raped by her father." *See* Memorandum, page 14. Riemer underlined the word rape. He argues that her statement was highly improper and highly prejudicial.

The record reveals that Araceli Desmaris was the sexual assault nurse examiner who testified at trial. The statement attributed to her came from the SANE Report, which had been offered into

evidence as State's Exhibit 8.  The record clearly shows that counsel, in fact, objected to the statement.  5 RR 23.  The trial court overruled the objection and admitted the exhibit.  *Id.*  Desmaris then read the following statement from the report: "I was raped by my dad.  He put himself inside me, and I was four the first time, and I was probably ten the last time." *Id.* at 34-35.  Riemer complains that his attorney just sat on his hands.  Despite Riemer's complaints, his attorney objected to the admissibility of the exhibit and was overruled.  His attorney was not ineffective for failing to object because he, in fact, objected to the exhibit.  Furthermore, counsel would not have been ineffective even if he had not objected to the report since hearsay testimony by a sexual assault nurse examiner as to statements of a victim describing abuse by a defendant is admissible under the hearsay exception.  *Prieto v. State*, 337 S.W.3d 918, 920-21 (Tex. App. - Amarillo 2011, pet. ref'd);  *Barnes v. State*, 165 S.W.3d 75, 82 (Tex. App. - Austin 2005, no pet.).  In light of these cases, this Court has previously rejected ineffective assistance of counsel claims based on counsel's failure to object to testimony regarding statements contained in a SANE Report.  *Bucknell v. Director, TDCJ-CID*, No. 4:10cv184, 4:10cv216, 2013 WL 1313088 (E.D. Tex. March 28, 2013), *c.o.a. denied*, No. 13-40969 (5th Cir. Jan. 21, 2014).  The claim lacks merit.

Riemer also complains that counsel failed to impeach the State's expert.  He asserts that Ms. Desmaris lied throughout her testimony.  He cited one example where she purportedly lied.  She testified that she had examined hundreds of hymens and that she had never seen a scarred hymen.  5 RR 28.  He asserts that her statement was proof that she lied.  He did not, however, provide any evidence that she had not examined hundreds of hymens or had seen a scarred hymen.  Once again, he has offered nothing more than a conclusory claim.

It is further noted that the Supreme Court has found that a the "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.'" *Giglio v. United States*, 405 U.S. 150, 153 (1972) (citations omitted).  "The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Id.* (citations omitted).  The Fifth Circuit subsequently dealt with the issue of perjury in *Kutzner v. Cockrell*, 303 F.3d 333, 336 (5th Cir.), *cert. denied*, 536 U.S. 978 (2002).  A petitioner must

prove that the prosecution knowingly presented or failed to correct materially false testimony during trial. *Id.* at 337. In the present case, Riemer does nothing more than claim that Ms. Desmaris lied. He offered no proof that she lied or that the State failed to correct materially false testimony.

Riemer goes on to argue that his attorney was ineffective for failing to impeach Ms. Desmaris. He did not, however, provide any evidence showing that his attorney had a basis to challenge her testimony. He did not, for example, show that any witnesses were available to impeach her testimony and had counsel located and called these witnesses, their testimony would have been favorable and they would have been willing to testify. Once again, he has presented a conclusory claim, which does not provide a basis for federal habeas corpus relief. He did not show that his attorney's representation was deficient or that he was prejudiced by such deficient representation. He did not satisfy either *Strickland* prong. The ineffective assistance of counsel claim lacks merit.

Riemer finally argues that he is entitled to relief because of the totality of counsel's errors or in the aggregate. He specifically cited his attorney's failure to give an opening statement, failure to object to an improper statement, and failure to impeach the State's expert. The Fifth Circuit has regularly rejected cumulative error claims while noting that federal habeas relief is available only for cumulative errors that are of constitutional dimension. *Coble v. Quarterman*, 496 F.3d 430, 440 (5th Cir. 2007); *Livingston v. Johnson*, 107 F.3d 297, 309 (5th Cir.), *cert. denied*, 522 U.S. 880 (1997); *Yohey v. Collins*, 985 F.2d 222, 229 (5th Cir. 1993). The Fifth Circuit has emphasized that "[m]eritless claims or claims that are not prejudicial cannot be cumulated, regardless of the total number raised." *Westley v. Johnson*, 83 F.3d 714, 726 (5th Cir. 1996) (citing *Derden v. McNeel*, 978 F.2d 1453, 1461 (5th Cir. 1992)), *cert. denied*, 519 U.S. 1094 (1997). Because all of Petitioner's ineffective assistance of trial counsel claims lack merit, he has failed to show that he was denied due process as a result of cumulative errors. *United States v. Moye*, 951 F.2d 59, 63 n.7 (5th Cir. 1992); *Derden*, 978 F.2d at 1454. The claim lacks merit.

Overall, all of Reimer's claims lack merit. The petition should be denied.

In addition to the foregoing, the petition should be denied for reasons provided by the state court. Riemer's ineffective assistance of counsel claims were fully addressed by the state trial court, which made the following findings of fact:

4. [Riemer] alleges that his trial counsel provided ineffective assistance of counsel (Application at 6). [Riemer's] memorandum alleges that his counsel had a need to consult with, or put on the stand, an expert to address the SANE nurse's testimony concerning a different complainant, J.R., and an expert concerning the psychological state of a different complainant, J.R. [Riemer] also alleges that his counsel's failure to investigate left him with no defensive theory of the case (Memorandum at 12).

5. The SANE nurse's exam of J.R., or the psychological state of J.R., is not relevant to the credibility of any witness testimony pertaining to the indecency charges involving complainant L.G. in this case. There was no testimony that L.G. had received a SANE exam or that L.G. had ever been to counseling.

6. [Riemer's] attorney did not have a defensive theory of the case; the attorney argued that the State's witnesses lacked credibility and that the State had not proved its case against [Riemer] beyond a reasonable doubt (*see* State's Answer, Exhibit A [5 R.R. at 166-82]).

7. [Riemer] presents no other defensive theory that his attorney could reasonably have put forward.

SHCR-01 at 62. The state trial court proceeded to issue the following conclusions of law:

1. [Riemer] has not carried his burden regarding either prong of the well-known standard for evaluating claims of ineffective assistance of counsel. *Ex parte Parra*, 420 S.W.3d 821, 824 (Tex. Crim. App. 2013); *Ex parte Flores*, 387 S.W.3d 626, 633 (Tex. Crim. App. 2012); *Strickland v. Washington*, 466 U.S. 668, 688 (1984).

2. This Court recommends the **denial** of all grounds for relief in [Riemer's] writ application.

SHCR-01 at 63. The Texas Court of Criminal Appeals subsequently denied Riemer's application without written order on findings of the trial court without a hearing.

Riemer makes no attempt to show that the findings or conclusions of the state court were unreasonable. He simply presents his claims anew to this Court. Consequently, his petition should be denied for the additional reason that he has not shown, as required by 28 U.S.C. § 2254(d), that the state court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Furthermore, Riemer failed to overcome the "doubly"

deferential standard that must be accorded counsel in the context of § 2254(d). Overall, Riemer is not entitled to federal habeas corpus relief because his various ineffective assistance of counsel claims lack merit and he has failed to satisfy the requirements of § 2254(d). The petition should be denied.

Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. 2253(c)(1)(A). Although Riemer has not yet filed a notice of appeal, it is respectfully recommended that this Court, nonetheless, address whether he would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (A district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before the court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*; *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003). "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, it is respectfully recommended that reasonable jurists could not debate the denial of Riemer's § 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)

(citing *Slack*, 529 U.S. at 484). Accordingly, it is respectfully recommended that the Court find that Riemer is not entitled to a certificate of appealability as to his claims.

Recommendation

It is accordingly recommended that the above-styled petition for writ of habeas corpus be denied and the case be dismissed with prejudice. A certificate of appealability should be denied.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superceded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 14th day of October, 2015.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE